**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MICHEL FERNANDEZ FUENTES,

Petitioner,

v.

JAMES JANECKA, ET AL,

Respondents.

Case No. 5:26-cv-05812-MAR

**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE**

## I.

## INTRODUCTION

On September 28, 2026, Petitioner Michel Fernandez Fuentes (A# 064-652-305) ("Petitioner"), an immigration detainee appearing pro se, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. Dkt. 1 ("Pet."). The clerk issued a Notice of General Order and Briefing Schedule on October 1, 2026, which ordered Respondents to file an Answer to the Petition by October 8, 2026. Dkt. 6. Respondents have not entered an appearance or filed an Answer to the Petition. See Dkt. 12, 12-1. The Office of the Federal Public Defender entered an appearance on behalf of Petitioner and filed a

traverse in support of the Petition on October 9, 2026. Dkts. 11, 12. The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. Dkts. 3, 9. **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody.**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition and Petitioner's Memorandum of Law in Support of Amended Writ of Habeas Corpus. Pet. at 10–11; Dkt. 5. Respondents had the opportunity to dispute these facts or provide additional facts but declined to do so. Dkts. 7, 12-1. Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a native and citizen of Cuba. Dkt. 5 at 1. Petitioner arrived in the United States on January 26, 2016 with legal permanent residence through a family reunification process. Pet. at 10. Petitioner was issued a permanent residence card that is valid until September 27, 2027. Id. Since his admission into the country, Petitioner has maintained employment and cared for his immediate family members as they undergo major illnesses such as cancer and Alzheimer's. Id. Petitioner's family and life partner reside with him in Florida. Id.

On February 2, 2024, Petitioner was sentenced to 18 months in prison and 18 months of probation in Pinelas county, Florida. Id.; Dkt. 5 at 2. On May 5, 2025, six days before his scheduled release from prison, Petitioner was detained by ICE and placed at the Glades County Immigration Detention Center in Florida. Pet. at 2; Dkt. 5 at 2. Petitioner remained at Glades for one month before being transferred to the Adelanto Detention Center. Dkt. 5 at 1–2. Petitioner has been held in ICE detention since May 5, 2025. Pet. at 10. Petitioner was denied bond at a Bond and Custody

Redetermination Hearing on November 12, 2025 on the grounds that Petitioner's release would pose a danger to the community. Id. at 43.

Petitioner was ordered removed to Cuba on February 6, 2026. Pet. at 2. Petitioner was not removed and his custody status was reviewed on April 15, 2026. Dkt. 5 at 56. Petitioner was subsequently informed that he would remain in custody because he was considered a flight risk and had not shown he would not pose a danger to the community. Id. at 58. Respondents attempted to remove Petitioner to Mexico but were unsuccessful. Id. at 10; Dkt. 12 at 2–3. On June 8 and June 11, 2026, Respondents conducted a "fear" interview with Petitioner. Id. Petitioner remains in custody at the Adelanto Detention Center. Pet. at 10–11.

## III.

## SUMMARY OF PETITIONER'S CLAIMS

First, Petitioner asserts his detention violates 8 U.S.C. § 1231(a)(6) and Zadvydas v. Davis because his removal is not significantly likely in the reasonably foreseeable future. Pet. at 6–7; Dkt. 12. Second, Petitioner asserts that efforts to remove him to a third country violate his due process rights under the Fifth Amendment and 8 U.S.C. § 1231. Id.; Dkt. 5 at 10. Respondents failed to present an opposition argument. See Dkt. 12-1.

Based on these claims, Petitioner requests that the Court order his immediate release from detention and enjoin Respondents from removing or seeking to remove Petitioner to a third country without notice and meaningful opportunity to respond. Pet. at 8; Dkt. 12. Finally, Petitioner requests attorney's fees and costs under the Equal Access to Justice Act and any other relief the Court deems appropriate. Pet. at 8.

## IV.

## LEGAL STANDARD

The Immigration and Nationality Act ("INA") establishes the procedures governing detention, release, and removal of noncitizens ordered removed from the United States. The statute at issue here, 8 U.S.C. § 1231(a), applies to detention

following the entry of final order of removal, including individuals in withholding-only proceedings. See Johnson v. Guzman Chavez, 594 U. S. 523, 533 (2021); Avilez v. Garland, 69 F.4th 525, 530 (9th Cir. 2023).

Under 8 U.S.C. § 1231(a)(1)(A), an alien who has been ordered removed must be detained during the 90-day removal period. 8 U.S.C. § 1231(a)(1)(A); see also Johnson v. Arteaga-Martinez, 596 U.S. 573, 578 (2022). Detention during the removal period is mandatory. See 8 U.S.C. § 1231(a)(2). After the 90-day removal period, "the Government 'may' continue to detain an alien who still remains here or release that alien under supervision." Zadvydas, 533 U.S. at 683 (quoting 8 U.S.C. § 1231(a)(6)). However, Section 1231(a)(6) includes an implicit limit on "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Id. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. Recognizing constitutional concerns raised by such prolonged detention, the Supreme Court observed "Congress previously doubted the constitutionality of detention for more than six months," and, therefore, "for the sake of uniform administration in the federal courts," established a presumptively reasonable six-month period for post-removal-order detention. Id. at 701. This six-month period is a presumption, not a guarantee of release, and detention may continue so long as removal remains reasonably foreseeable. Id.

After the six-month period, the burden is on the alien to show that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id.; see also 8 C.F.R. § 241.13 (setting out procedures to determine whether there is a significant likelihood of removal pursuant to Zadvydas). If the alien meets this burden, then the Government must "introduce evidence to refute that assertion" or release the alien. Id. However, the alien still "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. Importantly, "for

detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

## V.

## DISCUSSION

### A. PETITIONER'S DETENTION IS PROLONGED UNDER ZADVYDAS.

Under 8 U.S.C. § 1231(a)(6), an alien subject to a final order of removal may be detained beyond the 90-day removal period only for a period reasonably necessary to effectuate removal. See Zadvydas, 533 U.S. at 689. Six months is the presumptively reasonable period for post-removal detention. Id. at 701. After that period, continued detention is permissible only if removal remains reasonably foreseeable. Id.

Here, it is undisputed that Petitioner was ordered removed to Cuba on February 6, 2026. Pet. at 2. Therefore, the ninety-day removal period expired on May 7, 2026. Petitioner has been detained subject to a final order of removal for over eight months. Dkt. 12 at 2. Respondents do not contest the calculation of Petitioner's total post-removal-order detention. Thus, the Court concludes that Petitioner's post-removal-order detention has exceeded the presumptively reasonable six-month period and therefore constitutes prolonged detention under Zadvydas and Section 1231(a)(6).

### B. PETITIONER HAS DEMONSTRATED THAT REMOVAL IS NOT REASONABLY FORESEEABLE.

Once detention extends beyond the presumptively reasonable six-month period, the detainee bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. If the detainee makes such a showing, the burden shifts to the Government to produce evidence sufficient to rebut that showing. Id.

Here, the Court easily concludes that Petitioner has met his burden to show that there is good reason to believe that there is no significant likelihood of removal in the

reasonably foreseeable future. Respondents have detained Petitioner for eight months since he was ordered removed. During that time, the government has not obtained travel documents to Cuba. Indeed, as Petitioner states, Cuba has a demonstrated unwillingness to accept nationals when the United States attempts to remove them. Dkt. 12 at 2; see Cabrera v. Senior Warden, Adelanto Det. Facility, No. CV 26-03073-HDV (RAO), 2026 WL 2249486, at *3 (C.D. Cal. Aug. 3, 2026). Petitioner has also established good reason to believe that deportation to Mexico is not reasonably foreseeable. ICE has already attempted to deport Petitioner to Mexico unsuccessfully. Pet. at 10. Mexico has made acceptance of deportees contingent on the deportee's consent to be removed there, and Petitioner has declined consent to removal to Mexico. Id.; Dkt. 12 at 3. The Court therefore concludes that Petitioner has shown good reason to believe that Respondents are not able to deport Petitioner to Cuba or Mexico in the reasonably foreseeable future.

Thus, the burden shifts to Respondents to produce evidence to rebut Petitioner's showing that that there is no significant likelihood of removal in the reasonably foreseeable future. See Zadvydas, 533 U.S. at 701. However, Respondents do not present an opposition argument and therefore concede that Petitioner's removal is not reasonably foreseeable under Zadvydas. Id. Accordingly, Petitioner's detention under 8 U.S.C. § 1231(a)(6) is no longer authorized and Petitioner is entitled to release. See id. at 699 ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute").

The Court further concludes that Petitioner is entitled to notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i) should Respondents attempt to re-detain Petitioner in the future. See Valdez-Batista v. Immigr. & Customs Enf't Field Off. Dir., No. CV 25-02510-JNW (GJL), 2026 WL 449531 at *4 (W.D. Wash. Jan. 30, 2026) ("[I]n the event they seek to re-detain Petitioner in the future, Respondents must provide notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i)"). The re-detention of a noncitizen subject to a final order of

removal is governed by 8 C.F.R. § 241.13. The regulation was "intended to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release." Constantinovici v. Bondi, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025) (internal quotation marks, brackets, and ellipses omitted). The regulation states, in part, that "[t]he Service may revoke [a noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13.

The Court further concludes that Petitioner is entitled to written notice and a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3) before any attempted third-country removal. See Valdez-Batista, 2026 WL 449531, at *5 ("Accordingly, should Respondents take steps to remove Petitioner to a country other than Cuba, they must provide Petitioner with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3)"). Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but it must comply with both the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b), and the Due Process Clause. See Aden v. Nielsen, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); Kumar v. Wamsley, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025) ("[T]he Government must follow the same multi-tiered process for selecting a country of removal that applied in the removal proceedings"). To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. See Aden, 409 F. Supp. 3d at 1019. Moreover, the INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened . . . because of [their] race, religion, nationality, membership in a

particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Government must "make a determination regarding a noncitizen's claim of fear before deporting him." Aden, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A).

Many courts have held that if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge. See, e.g., Nguyen v. Scott, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025) ("Both the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims. This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held." (internal quotation marks, brackets, and citation omitted)); accord A.A.M. v. Andrews, 815 F. Supp. 3d 1124, 1141 (E.D. Cal. 2025); Gomez v. Mattos, 2025 WL 3101994, at *6 (D. Nev. Nov. 6, 2025); M.T.M. v. Andrews, 2025 WL 4058220, at *9 (C.D. Cal. Sept. 11, 2025).

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being detained since February 2, 2026 for the purpose of removal even though there is no significant likelihood of removal to Cuba or Mexico in the reasonably foreseeable future. Petitioner would again suffer irreparable harm if Respondents re-detain him without a significant likelihood of removal in the reasonably foreseeable future and legal remedies such as

damages would be inadequate to cure the unconstitutional deprivation of liberty. The balance of hardships and public interest in merely requiring Respondents to comply with their own regulations and provide basic due process in the event they seek to re-detain Petitioner for purposes of removal or remove him to a third country, versus forcing Petitioner again to suffer detention and file a habeas petition to secure relief, favor the imposition of a limited injunction.[1]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

Finally, the Court notes that Petitioner also requested an award of reasonable attorneys' fees and costs. The Court will consider an application under the Equal Access to Justice Act ("EAJA") that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.

## ORDER

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents are ORDERED to immediately release Petitioner **Michel Fernandez**

---

1 Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

**Fuentes (A# 064-652-305)** from custody and return any documents or items confiscated from him at the time of his detention. Respondents are ENJOINED from re-detaining Petitioner absent a material change in circumstances and full compliance with 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(1), and due process. Respondents are further ENJOINED from attempting to remove Petitioner to any country other than Cuba unless Respondents first provide written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3). Respondents are ORDERED to file a notice of compliance within twenty-four hours.

IT IS SO ORDERED.

DATED: October 29, 2026

HON. MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE